UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BRUCE CARNEIL WEBSTER,

        Petitioner,

        vs.                      CAUSE NO. 2:12-cv-086-WTL-WGH

CHARLES L. LOCKETT, WARDEN,
UNITED STATES PENITENTIARY,
TERRE HAUTE (USP),

        Respondent.

**<u>RULE 16-2 STATEMENT OF POSITION OF THE PARTIES</u>**

Pursuant to Local Rule 16-2 and this Court's October 5, 2015 Order, the parties have

conferred regarding their positions as to what course of action the Court should take in this

matter, identified areas of agreement and disagreement, and submit the following statement of

position:

**<u>BACKGROUND AND PROCEDURAL POSTURE</u>**

Mr. Webster is being held on federal death row in Terre Haute, Indiana. His execution is

stayed in collateral litigation challenging the constitutionality of the federal lethal injection

procedures, by order of Chief Judge Richard W. Roberts of the U.S. District Court for the

District of Columbia. *See* Order, *Roane, et al. v. Gonzales, et. al.*, Case No. 1:05-CV-2337

(D.D.C. Feb. 16, 2007) (Dkt. No. 27).

Mr. Webster filed the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241

(the "Petition") on April 6, 2012. (Dkt. Nos. 1-4.) This Court issued the Entry and Order to

Show Cause on April 19, 2012, requiring Respondent (the "Government") to answer the

allegations in the Petition and to show cause why the Petition should not be granted.  (Dkt. No. 9.)  The Government filed its Return to Order to Show Cause on August 7, 2012, and moved to dismiss the Petition in its entirety.  (Dkt. No. 17.)  Mr. Webster filed his Reply to the Government's Return to Show Cause on October 12, 2012.  (Dkt. Nos. 23-25.)  On November 13, 2013, this Court dismissed the Petition in its entirety and entered judgment against Mr. Webster.  (Dkt. No. 29.)

Mr. Webster appealed to the Seventh Circuit, which reversed and remanded this Court's order dismissing the Petition in an *en banc* opinion.  *See* Opinion of the Court, *Webster v. Daniels*, Case No. 14-1049 (7th Cir. May 1, 2015) (Dkt No. 49) (the "Opinion").  In the Opinion authored by Chief Judge Wood and joined by Circuit Judges Posner, Flaum, Rovner, Williams, and Hamilton, the Seventh Circuit held that "there is no such absolute bar to the use of the safety valve found in section 2255(e) for new evidence that would demonstrate categorical ineligibility for the death penalty," *id.* at 3, and remanded, stating:

> The district court must hold a hearing for the purpose of deciding whether the Social Security records were indeed unavailable to Webster and his counsel at the time of the trial.  In considering that question, the district court must also evaluate trial counsel's diligence.  If the court concludes, as Webster's lawyers urge, that the records were unavailable and all due diligence was exercised, and that Webster has them now only because of a fluke, then it must turn to the merits of the petition: is Webster so intellectually disabled that he is categorically ineligible for the death penalty under *Atkins* and *Hall*?

*Id*. at 45-46.

## THE PARTIES' POSITIONS

The parties agree that some period of discovery is necessary, but disagree regarding the scope of discovery.  The parties also agree that an evidentiary hearing is necessary, but disagree regarding the appropriateness of bifurcating that hearing.  Finally, the parties agree that the Court

should convene a case management conference to discuss these issues and a scheduling order in greater detail.

The respective positions of the parties are set forth below.

**Petitioner's Position Statement**

Petitioner respectfully requests that this case proceed in two phases: discovery and presentation of evidence. The first phase would allow for a period of discovery regarding the two primary evidentiary issues identified by the Seventh Circuit—the unavailability of the Social Security Administration records for trial and Mr. Webster's eligibility for a capital sentence. The second phase would provide for the submission of evidence regarding these issues, resulting in findings and a decision on the Petition by the Court.

This process is consistent with the directions given by the Seventh Circuit regarding the conduct of this matter:

> At the threshold stage, [Webster] has the burden of proffering convincing evidence of intellectual disability to show that he may not, consistently with *Atkins* and *Hall*, be under a sentence of death. In order to relate to the findings at trial, that evidence cannot be newly created; instead, it must be previously existing evidence of his intellectual disability that counsel did not uncover despite diligent efforts. If he succeeds in this *prima facie* showing, then he has satisfied the savings clause and may proceed with a 2241 petition. At a hearing on the merits, he would need to introduce the evidence and allow the government to refute it. The government here has indicated that it would challenge the diligence of counsel; that it would argue that the allegedly new evidence is actually just cumulative; that it would review the earlier evidence; and that even with the new evidence Webster's adaptive functioning is high enough that it negates his low I.Q. scores (an extremely rare and largely untested scenario, as far as we can tell from post-*Atkins* cases). Webster would respond to those points. In the end, the district court would decide whether, as a matter of fact, Webster is constitutionally ineligible for the death penalty.

Opinion at 36-37.

The Court of Appeals further noted that in deciding the "merits" (as the Court used that term), this Court should consider the significance of these new records in light of the evidence proffered at trial. *Id.* at 37-42. The Opinion notes that while there was a "good deal of evidence about intellectual disability at the trial," the I.Q. evidence presented at trial was subjected to charges of unreliability and manipulation which do not apply to the SSA records. *Id.* at 38-39 ("In short, had the I.Q. tests and opinions from the Social Security file been available to the experts at the trial, to the jury, and to the district court, their assessment of Webster may have been different."). "Equally importantly," the Court notes, the SSA records "shed additional light" on Webster's adaptive functioning, including "evidence that contradicted everyone's assumption at the trial that Webster had been lying when he said that he was in special education classes. If it had been clear that he was telling the truth, or even if objective evidence had supported his assertion, the jury and the district court may have viewed Webster's poor school performance, sleeping in class, and dropping out in the 9th grade in a different light." *Id.* at 39.

### A. Discovery

Consistent with this direction, Petitioner seeks to engage in discovery directed to, at a minimum, the Social Security Administration (relating to, among other things, the nature of the information in its files, its response to trial counsel's pre-trial request for information, its policies and procedures relating to the conduct of examinations for intellectual disability during the relevant time frame, its destruction of Mr. Webster's records following Dorsey & Whitney's request for information relating to this proceeding, and its document retention and destruction policies); and the U.S. Attorney for the Northern District of Texas (relating to, among other things, any pre-trial communications with the SSA, its own attempts to identify and obtain SSA and medical records, and the extent of knowledge of the existence of the SSA records at the time

of trial).  Petitioner anticipates the need for some deposition testimony from representatives of both of these agencies; however, the breadth, scope, and number of these depositions will depend on the evidence uncovered in the records.

Further, Petitioner's position is that evidence on the "merits" of the claim for intellectual disability should be limited to evidence which existed at the time of trial or expert opinion about that evidence (*see* discussion of "merits" evidence in Opinion at 36-43), and that, accordingly, discovery regarding Petitioner's intellectual disability will be limited and, in part, coextensive with discovery of the threshold issue.

### B.  Evidentiary Hearing

Petitioner maintains that after the discovery period has closed, the Court should conduct a single evidentiary hearing regarding the unavailability of records and diligence of counsel, and Mr. Webster's intellectual disability in light of all of the evidence that existed at the time of trial. Petitioner understands that the Government will request that the evidentiary hearing be bifurcated into two phases.  However, bifurcation is not appropriate here: because the majority of discovery and testimony in this matter will relate to the unavailability of the records and diligence of counsel, judicial efficiency will not be served by convening a second discovery period or a second hearing for issues relating to Webster's intellectual disability.  Further, scheduling two separate hearings will create a burden on the Court as well as the parties, whose out-of-town counsel (who are, in Petitioner's case, pro bono counsel) would need to prepare for and travel to Indiana a second time for a separate hearing.  The Government's request to break up these related issues into piecemeal litigation will needlessly lengthen the total time to process the case and increase the burden on both the Court and the parties.  Addressing these two issues simultaneously is the quickest and most judicially efficient way to handle this case.

Petitioner requests that before setting any deadlines or entering a case management order, the Court convene a Rule 16 conference to discuss a case management plan, the parties' positions for proceeding in this case, and any other issues the Court deems advisable at this time. Further, in light of issues set forth in the Government's Position Statement, Petitioner anticipates that additional briefing on some of the discovery and merits issues will be required prior to or in conjunction with the case management conference.

**The Government's Position Statement**

The government agrees that the parties should engage in a period of discovery, followed by an evidentiary hearing. The government believes, however, that bifurcation of the threshold issues (the availability of records and diligence of counsel) and the question of intellectual disability is faithful to the Seventh Circuit's instructions and furthers judicial efficiency. Discovery should initially be limited to the threshold issues, and the government disagrees that depositions are necessary or appropriate in this case, especially given the discrete nature of the issues at hand, the unique procedural posture, the government's independent discovery obligations, and the inevitable evidentiary hearing before this Court where Webster can question witnesses. Finally, if and when the parties turn to the merits, the government disagrees that the government should be limited in its discovery and proof to evidence that existed at trial, and the Seventh Circuit's plain language supports this position.

**A. Bifurcation of the Threshold Issues and the Merits**

The government maintains that in accordance with the Seventh Circuit's opinion—and to further interests of judicial economy and to limit litigation costs—the Court should first resolve the two threshold issues before turning to the question of intellectual disability. In resisting bifurcation, Webster quotes a portion of the Seventh Circuit's opinion, but the quotation

addresses the burden of proof and some mechanics of the evidentiary hearing. *See supra* at 3. It does not address the order with which this Court should address the threshold issues and the merits. The concluding portion of the opinion does.

The opinion concludes by reiterating its holding: "Webster is not barred as a matter of law from seeking relief under section 2241." Opinion at 45. But it notes that "[f]urther proceedings are necessary, however, *before* the district court can reach the merits of his habeas corpus petition." *Id.* (emphasis added). The opinion specifies what the threshold issues are: "The district court must hold a hearing for the purpose of deciding whether the Social Security records were indeed unavailable to Webster and his counsel at the time of the trial. In considering that question, the district court must also evaluate trial counsel's diligence." *Id.* Finally, the opinion explains that *if* Webster satisfies his burden of proving that the records were unavailable and trial counsel was diligent, only then should the Court turns to the merits. "*If* the court concludes, as Webster's lawyers urge, that the records were unavailable and all due diligence was exercised, and that Webster has them now only because of a fluke, *then* it must turn to [the question of intellectual disability]." *Id.* at 45-46. This language supports the government's position that bifurcation is appropriate.

Judicial economy and limitation of litigation expenses likewise support the government's position. If Webster fails to meet his burden of proving that the records were unavailable and that trial counsel exercised "all due diligence," then there is no need for the parties to present their cases regarding, or for the Court to decide, the question of Webster's alleged intellectual disability. Additionally, as explained below, the government disagrees that discovery relating to the threshold issues would be coextensive with discovery on the question of intellectual disability. To the contrary, if Webster satisfies his threshold burdens, then the government

anticipates gathering evidence to aid the Court in resolving the merits issue. Thus, failing to bifurcate the threshold issues and the merits could result in unnecessary discovery and litigation related to the merits, needlessly increasing litigation expenses and delaying resolution of the threshold issues.

### B. Scope of Discovery

The government agrees that the Court should permit discovery, but the government's view is that the scope and time period for discovery should be limited. The threshold issues are discrete: whether the Social Security documents at issue were available to Webster and whether Webster's trial counsel exercised due diligence in trying to obtain them. Discovery should be limited accordingly, especially given this case's history. Webster was indicted in 1994, over twenty years ago. The records that he now claims undermine the trial court's finding of no intellectual disability are even older. For the sake of finality and in the victim's family's interests, the government seeks to resolve this matter as efficiently as possible.

The government has no objection to Webster seeking relevant, unprivileged documents and information from the SSA relating to Webster's Social Security documents at issue here and the SSA's document-retention policies. At this point, the government anticipates requesting similar information from opposing counsel: documents and information related to the Social Security records, as well as documents and information related to Webster's trial counsel's diligence.

For multiple reasons, however, Webster should not be permitted to seek discovery— including depositions—from the U.S. Attorney's Office. The government's obligation to disclose any material exculpatory information is ongoing regardless of any discovery requests in this case. Thus, even though current counsel for the government has been told by two members

of the prosecution team that they were not aware of Webster's Social Security records at the time of trial, the government would produce any evidence discovered indicating the opposite. Moreover, discovery from the U.S. Attorney's Office would be irrelevant to the issue at hand— whether the documents were available to Webster—because his former correspondence regarding the documents was properly directed to the SSA and not the U.S. Attorney's Office. Additionally, Webster should not be permitted to engage in such discovery when there is no indication or evidence that the U.S. Attorney's Office failed in its disclosure obligations.

Regarding depositions, the government does not agree that deposition testimony is appropriate. Webster prefers to depose an agency representative from the Social Security Administration and the U.S. Attorney's Office, though he cautions that "the breadth, scope, and number of these depositions will depend on the evidence uncovered in the records." In a typical case, depositions are of course an important discovery tool, helping litigants prepare for summary judgment proceedings, trial, or settlement. This is not a typical civil case. The issues are well defined, and there will be no summary judgment proceedings, trial, or settlement. Moreover, discovery in the criminal and quasi-criminal context is fundamentally different than the civil context due to the government's affirmative, ongoing discovery obligations and because evidentiary hearings are the standard method of resolving factual disputes.

Exclusion of deposition testimony does not mean Webster would be prevented from examining relevant witnesses. Both parties agree that an evidentiary hearing is appropriate. Both parties may subpoena witnesses for examination during the evidentiary hearing, and they may cross-examine witnesses.[1] For example, Webster may subpoena an agency representative

---

[1] The government reserves the right to resist overbroad or unreasonable subpoenas. Regarding testimony from someone from the U.S. Attorney's Office in the Northern District of Texas, the government notes that all members of the prosecution team have since left the office. Additionally, for the reasons stated above, the prosecution team's knowledge of the documents, if any, would be irrelevant to the issues at hand. Nonetheless, if former prosecutors

from the SSA to testify during the hearing about Webster's records and the SSA's policies and procedures.[2] In any event, the government anticipates calling a witness from the SSA, and Webster may cross-examine that witness. Thus, given the discrete nature of the issues at hand, the unique procedural posture of this case, the government's independent discovery obligations, and the availability of an evidentiary hearing before this Court, the government fails to see how taking depositions before the evidentiary hearing would materially aid either party.

Finally, the government disagrees with Webster's assertion that any discovery and proof related to the question of his alleged intellectual disability should be limited to evidence that existed at the time of trial. The Seventh Circuit's opinion establishes the opposite, explaining that because Webster is not limited to the evidence before the trial court, neither is the government: "Both the government and Webster would be entitled at a hearing to offer evidence relevant to that determination [regarding intellectual disability]; if Webster is not limited to the record before the original trial court, there is no reason to impose such a limit on the government." Opinion at 46. The opinion goes on to explain that "[i]f he gets this far, what this will be as a practical matter is a partial new sentencing hearing." *Id.* In light of the Seventh Circuit's instructions, the government's position is that, should there be a hearing regarding intellectual disability, the government should be free to admit its own evidence on the subject. Under those circumstances, the government may need to engage in significant investigation and fact-gathering on the matter.

---

were subpoenaed to testify about information gained in the course and scope of their employment with the U.S. Attorney's Office, a *Touhy* request would need to be made and approved.

[2] Both the government and Webster's counsel may subpoena a representative from the SSA, and the SSA's *Touhy* regulations explicitly exempt from compliance Department of Justice attorneys. 20 C.F.R. § 403.115. Webster would need to make a formal *Touhy* request to the SSA to obtain the testimony of an SSA employee, 20 C.F.R. § 403.120, even though such a request would be unnecessary if the government called an SSA witness itself.

### C. Evidentiary Hearing

The government agrees that the Court should hold an evidentiary hearing on the threshold issues, and if Webster meets his burden and clears those hurdles, the Court should hold a hearing on the ultimate question of intellectual disability.  For the reasons stated above, the government believes that bifurcation of the issues is faithful to the Seventh Circuit's opinion and furthers judicial efficiency.

Dated:  November 10, 2015                    DORSEY & WHITNEY LLP


By  s/ Steven J. Wells_____
    Steven J. Wells
    *Admitted pro hac vice*
    Kirsten E. Schubert
    *Admitted pro hac vice*
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

Monica Foster (No. 8368-49)
INDIANA FEDERAL COMMUNITY
DEFENDERS, INC.
111 Monument Circle, Suite 2150
Indianapolis, IN  46204
Telephone:  (317) 383-3520
Facsimile:  (317) 383-3525

*Attorneys for Petitioner Bruce Webster*

Dated:  November 10, 2015

Josh J. Minkler
United States Attorney


By  s/ Wes Hendrix
    Wes Hendrix
Special Assistant U.S. Attorney
Texas Bar No. 24041086
U.S. Attorney's Office, S.D. Indiana
10 W. Market St., Suite 2100
Indianapolis, IN  46204
Telephone: (214) 659-8600
Facsimile:  (214) 659-8802

*Attorneys for Respondent*