UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BRUCE CARNEIL WEBSTER,

        Petitioner,

    vs.                                   CAUSE NO. 2:12-cv-86-WTL-MJD

CHARLES LOCKETT,

        Respondent.

## BRIEF IN SUPPORT OF PETITIONER'S REQUEST TO SEEK DISCOVERY FROM THE OFFICE OF THE UNITED STATES ATTORNEY

Pursuant to this Court's Entry Regarding Status Conference dated February 12, 2016 (Dkt. No. 62), Bruce Carneil Webster ("Mr. Webster" or "Petitioner") respectfully submits the following brief in support of his request to seek discovery from the Office of the United States Attorney. Such discovery is both permitted by, and well within the scope of discovery under, the Federal Rules of Civil Procedure and necessary to the fair and just adjudication of this case.

## PROCEDURAL BACKGROUND

In 1995, Mr. Webster was tried and convicted in the Northern District of Texas and sentenced to death. In 2009, evidence surfaced that proves, contrary to the Government's arguments at trial, that Mr. Webster is categorically and constitutionally ineligible for the death penalty due to his intellectual disability.[1] As described in the

---

[1] After Mr. Webster's Petition was filed, the Supreme Court adopted the term "intellectual disability" as a replacement for the more antiquated term "mental retardation." *See Hall v.*

Petition, this evidence, which the Social Security Administration ("SSA") provided to Petitioner's undersigned habeas counsel—apparently by mistake—consisted of, among other things, pre-crime records of SSA physicians concluding that Mr. Webster's IQ measured below 70, that he was mentally retarded, and that he did not exhibit signs of malingering. These files also contained evidence that Mr. Webster had, contrary to the Government's argument at trial, been enrolled in special education classes in grade school. This evidence, which is referred to here as the "SSA Evidence," was unavailable to Mr. Webster's trial counsel. *Webster v. Daniels*, 784 F.3d 1123, 1125, 1133 (7th Cir. 2015) (en banc).

In addition, it is clear from the documents that were eventually provided by the SSA in response to habeas counsel's request (nearly 13 years after Petitioner's trial counsel requested but never received these records) that the SSA did not produce Mr. Webster's entire file. The uncontroverted record establishes that sometime between the initial request for information from Petitioner's habeas counsel (in which counsel specifically noted that the information was sought in connection with capital proceedings) and counsel's follow-up demands for the full SSA file on Mr. Webster, the SSA destroyed Mr. Webster's file. Supplemental Declaration of Kristen K. LeRoux ("Supp. LeRoux Decl."), Exs. B-G (on file herewith as Exhibit 1 to the Declaration of Kirsten E. Schubert ("Schubert Decl.")).

*Florida*, 134 S.Ct. 1986, 1990 (2014) ("Previous opinions of this Court have employed the term 'mental retardation.' This opinion uses the term 'intellectual disability' to describe the identical phenomenon."). Accordingly, Mr. Webster adopts the phrase "intellectual disability" here to refer, interchangeably, to what was described in the Petition as "mental retardation."

In accordance with the Seventh Circuit's ruling that he is not barred from seeking relief pursuant to 28 U.S.C. § 2241, Mr. Webster now has "the opportunity to present [this] newly discovered evidence that would demonstrate that he is . . . ineligible for the death penalty under the Supreme Court's decisions in *Atkins v. Virginia*, 536 U.S. 304 (2002), and *Hall*." *Webster v. Daniels*, 784 F.3d at 1125, 1146. As a threshold issue, Petitioner must address whether the SSA Evidence was unavailable at the time of trial through the exercise of due diligence. *Id.* at 1145-46; Entry Regarding Status Conference (Dkt. No. 62) at 1 (referring to bifurcation of this threshold issue). The discovery that Petitioner now seeks from the U.S. Attorney's Office is directly relevant to these issues.

## TYPES OF DISCOVERY SOUGHT

In order to show that the SSA Evidence was unavailable, despite the diligence of trial counsel, Mr. Webster intends to seek relevant, non-privileged information from the Office of the United States Attorney for the Northern District of Texas. Specifically, he intends to issue requests for production of documents and notice or subpoena depositions pursuant to Federal Rules of Civil Procedure 30, 34, and 45. These requests will be narrowly tailored to address the following subjects:

- The extent to which the U.S. Attorney's Office had knowledge, documents, or other information relating to the existence or contents of SSA records regarding Mr. Webster, including the SSA Evidence;

- The U.S. Attorney's Office's own inquiries and communications with the SSA at or before the time of trial regarding any records relating to Petitioner in the

possession of the SSA, including any attempts to obtain Petitioner's records from the SSA, and the SSA's response; and

- The U.S. Attorney's Office's inquiries and communications with the SSA after the time of trial regarding Petitioner's SSA records, including any attempts to obtain the SSA Evidence (or similar evidence) and the SSA's response.

Mr. Webster does not seek to issue more requests than are permitted by the Federal Rules and will issue only those that are proportionate to the needs of this case.

## **ARGUMENT**

**I.      The Federal Rules of Civil Procedure Apply and Permit Petitioner to Seek Discovery that Is Relevant to His Claim.**

**A.      The Federal Rules of Civil Procedure Apply to Discovery in this Case.**

Generally speaking, "[a] habeas petition brought pursuant to 28 U.S.C. § 2241 is a civil matter," to which the Federal Rules of Civil Procedure apply. *United States v. Lowery*, 2009 WL 3460448, at *1 (S.D. Ill. Oct. 22, 2009). Rule 81 of the Federal Rules makes this crystal clear: "These rules apply to proceedings for habeas corpus." Fed. R. Civ. P. 81(a)(4).

While the Seventh Circuit has limited habeas discovery in certain instances (for example, finding that the Prison Litigation Reform Act did not apply to habeas litigation challenging conditions of confinement in non-death cases, *Walker v. O'Brien*, 216 F.3d 626, 634-36 (7th Cir. 2000)), the Seventh Circuit has, even in those cases, applied the rules governing 2254 and 2255 proceedings, which state that for good cause, the court may "authorize a party to conduct discovery under the Federal Rules of Civil Procedure."

Rules Governing Section 2254 Cases or the Rules Governing Section 2255 Proceedings Rule 6; *see also, e.g.*, *Russell v. Scutt*, 2013 WL 1212802, at *1 n.1 (E.D. Mich. March 25, 2013) (the Rules Governing 2254 Cases may by their own terms "be applied to habeas-corpus actions filed under section 2241" and citing Rule 1(b)).

This Court already has determined—and all parties agree—that discovery is necessary in this case. Entry Regarding Status Conference (Dkt. No. 62) at 1; November 10, 2015 Joint Rule 16-2 Statement of Position (Dkt. No. 55) at 6 ("The Government agrees that the parties should engage in a period of discovery . . . ."). Mr. Webster should be permitted to issue the proposed discovery pursuant to and in accordance with the Federal Rules of Civil Procedure, especially where, as here, the discovery that Mr. Webster seeks from the U.S. Attorney's Office is narrowly tailored and directly relevant to the key issues in this case.

**B.      The Documents and Information Sought Are Relevant and Proportional.**

Federal Rule of Civil Procedure 26(b) sets forth two principles that guide the scope of discovery in all civil litigation—relevance and proportionality: "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action [and] the parties' relative access to relevant information." Fed. R. Civ. P. 26(b)(1).

The importance of the issues at stake in this matter cannot be overstated. Mr. Webster's case is literally a matter of life and death. In order to move past the threshold

issues of availability and diligence so that this Court can consider for the first time on its merits the question of whether Petitioner is, in light of this newly uncovered evidence, intellectually disabled and ineligible for the death penalty (a finding that one federal appellate judge has already stated is "virtually guaranteed," *In re Webster*, 605 F.3d 256, 259 (5th Cir. 2010) (Weiner, J., concurring)), Mr. Webster must have access to information in the possession of the Government.

The discovery sought here is directly relevant to issues of availability of the SSA Evidence and trial counsel's diligence. First, if the Government sought Petitioner's records from the SSA and was told by the SSA that none existed, this would be powerful evidence that the documents were, in fact, "unavailable."

Second, such evidence would refute the Government's speculation, which it has offered both to this Court and the Seventh Circuit, that the SSA Evidence was available to Mr. Webster's trial team but that they simply failed to follow up to obtain it. *See Webster v. Daniels*, 784 F.3d at 1141(noting that the Government "has indicated that it would challenge the diligence" of trial counsel). Although there is no evidence that trial counsel knew that the SSA had any records, let alone what those records contained (Petitioner had sought benefits related to a sinus condition, not mental health or retardation), Mr. Webster's trial team made a routine request to the SSA to turn over any records relating to Mr. Webster that agency might have. Supp. LeRoux Decl., Ex. A; Declaration of Larry M. Moore ¶ 4 (on file herewith as Schubert Decl. Ex. 2). But Mr. Webster's trial counsel's best recollection is that the trial team was told by the SSA that no such documents existed. *Id.* If the Government inquired of the SSA and got the same

answer, this would eliminate the Government's speculative argument that trial counsel "failed to follow up" and corroborate trial counsel's counsel testimony.

Third, there is a serious spoliation issue in this case. After undersigned counsel requested "any and all records pertaining to Mr. Webster" from the SSA, *see* Supp. LeRoux Decl. ¶ 4, Ex. B (noting that "Mr. Webster is currently on death row and faces an execution date"), the SSA produced only part of Mr. Webster's file, *see id.* ¶ 7; then, after further repeated inquiries by habeas counsel, the SSA, by its own admission, destroyed Mr. Webster's file, *see id.* ¶¶ 8-13, Exs. C-G. This may have included the SSA's own records of its response to inquiries from Petitioner's or the Government's counsel. If the Government had communications with the SSA about habeas counsel's request or the SSA's destruction of that evidence, it would be highly relevant to Petitioner's spoliation claim—which relates both to the threshold issue and the merits issue.

Finally, if the U.S. Attorney's Office had, or knew about the existence of, the SSA Evidence, it had a duty to disclose it to Mr. Webster. Its failure to provide or disclose the existence of such information would constitute a *Brady* violation. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). If the Government violated *Brady*, that violation would constitute an independent basis for relief and also bear on the issue of trial counsel's diligence, since the Government should have provided such evidence directly to trial counsel.

Importantly, Mr. Webster does not seek privileged information, nor does he seek the thoughts or mental impressions of the Assistant United States Attorneys who prosecuted him. The Government's knowledge of the existence of Petitioner's SSA

records, its attempts to obtain them, and its communications with the SSA are not privileged. "[N]either work-product immunity nor the attorney-client privilege protects underlying facts." *Phillips v. Indianapolis Life Ins. Co.*, 2009 WL 1564384, at *2 (S.D. Ind. June 3, 2009) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981)).

## CONCLUSION

For the reasons set forth above, and based upon the entire record in this matter, Mr. Webster respectfully requests that this Court grant him leave to seek the requested discovery from the Office of the United States Attorney for the Northern District of Texas.

Dated:  February 26, 2016

DORSEY & WHITNEY LLP


By  s/ Kirsten E. Schubert
Steven J. Wells
*Admitted pro hac vice*
Kirsten E. Schubert
*Admitted pro hac vice*
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

Monica Foster (No. 8368-49)
INDIANA FEDERAL COMMUNITY
DEFENDERS, INC.
111 Monument Circle, Suite 2150
Indianapolis, IN  46204
Telephone:  (317) 383-3520
Facsimile:  (317) 383-3525

*Attorneys for Petitioner Bruce Carneil Webster*