# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BRUCE CARNEIL WEBSTER,
          Petitioner,

v.

                                     Cause No.     2:12-CV-86-WTL-MJD

CHARLES LOCKETT,
          Respondent.

## DECLARATION OF DELONIA A. WATSON

I, Delonia A. Watson, declare as follows:

1.      I have been a licensed attorney in Texas since 1984 and I have been admitted to practice law in the Northern District of Texas, the United States Court of Appeals for the Fifth Circuit, and the United States Supreme Court.  I was employed as an Assistant United States Attorney in the Appellate Section of the Northern District of Texas from October 1988 until my retirement in November 2013.  My primary duties in the U.S. Attorney's Office were briefing and arguing criminal appeals and Section 2255 actions, and advising trial prosecutors in the Criminal Trial Section.

2.      During my tenure with the U.S. Attorney's Office in Fort Worth, I served as the Appellate Section's trial liaison for *United States v. Bruce Carneil Webster*, Case No. 4:94-CR-121-Y.  In that capacity, I worked with lead trial AUSA (later United States Attorney) Richard B. Roper, and trial AUSAs Christopher A. Curtis and Paul D. MacAluso.  I consulted with the trial prosecutors and reviewed the evidence relating to guilt and sentencing before, during, and after trial, including the sentencing phase.

3.      After Webster's sentencing, I represented the government in responding to

Page **1** of **4**

his direct appeal before the Fifth Circuit.  *See United States v. Webster*, 392 F.3d 787 (5th Cir. 2004).  I also represented the government in responding to Webster's first Section 2255 motion before the district court and the Fifth Circuit.  *See United States v. Webster*, 421 F.3d 308 (5th Cir. 2005).  I also drafted the government's response to his Section 2241 petition that is at issue before this Court.  (*See* Dkt. No. 17.)

4.    In preparing this declaration, I reviewed Webster's Brief In Support Of Petitioner's Request To Seek Discovery From The Office Of The United States Attorney (Dkt. No. 63), the Declaration Of Kirsten E. Schubert (Dkt. No. 64), and Exhibits One and Two that are attached to Schubert's Declaration (Dkt. Nos. 64-1, 64-2.)  In those filings, Webster refers to "SSA Evidence."  (Dkt. No. 63 at 2.)  Having drafted the government's response to Webster's Section 2241 petition, I am very familiar with the referenced "SSA Evidence" because it forms the basis of his request for relief.

5.    Webster's brief indicates that he intends to seek discovery from the U.S. Attorney's Office to address the following three subjects:

> (i) "The extent to which the U.S. Attorney's Office had knowledge, documents, or other information relating to the existence or contents of SSA records regarding Mr. Webster, including the SSA Evidence";
>
> (ii) "The U.S. Attorney's Office's own inquiries and communications with the SSA at or before the time of trial regarding any records relating to Petitioner in the possession of the SSA, including any attempts to obtain Petitioner's records from the SSA, and the SSA's response"; and
>
> (iii) "The U.S. Attorney's Office's inquiries and communications with the SSA after the time of trial regarding Petitioner's SSA records, including any attempts to obtain the SSA Evidence (or similar evidence) and the SSA's response."

(Dkt. No. 63 at 3-4.)

6.      Based on my involvement in this case throughout the trial, sentencing, and direct appeal, the Section 2255 motion and appeal therefrom, and the Section 2241 petition at issue here, I can state the following with regard to the respective subjects raised by Webster:

(i) I advised the trial prosecutors in Webster's underlying criminal case and served as lead counsel for the government in his post-sentencing litigation, including this Section 2241 action that he filed after his current attorneys learned of the SSA Evidence in 2009. Simply stated, the U.S. Attorney's Office first learned of the SSA Evidence after it became the subject of post-conviction litigation. Prior to that, the U.S. Attorney's Office did not have knowledge, documents, or other information relating to the existence or contents of the SSA Evidence. As to any other evidence in our possession, including all evidence relating to Webster's intellectual capacity, we fully complied with our discovery and disclosure obligations pursuant to statute, rule, court order, *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).

(ii) The U.S. Attorney's Office made no attempt to obtain the SSA Evidence during or prior to trial and sentencing because we did not know about it. To the best of my recollection, we made no attempt to obtain any other SSA records regarding Webster.

(iii) Again, the U.S. Attorney's Office did not learn of the SSA Evidence until it became the subject of post-conviction litigation. I am not aware of anyone at the U.S. Attorney's Office, or any investigator or investigative agency connected with this case, having requested and received SSA information regarding Webster, including the SSA Evidence. Because I retired from the office in November 2013, I do not know whether the U.S. Attorney's Office has made such an inquiry to the SSA since that time.

Page **3** of **4**

I declare under penalty of perjury that the foregoing is true and correct.


Dated: March 8, 2016                    *s/Delonia A. Watson*

                                        _____

                                        Delonia A. Watson