UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BRUCE CARNEIL WEBSTER,

Petitioner,

vs.                                                    CAUSE NO. 2:12-cv-86-WTL-MJD

CHARLES LOCKETT,

Respondent.

## REPLY BRIEF IN SUPPORT OF PETITIONER'S REQUEST TO SEEK DISCOVERY FROM THE OFFICE OF THE UNITED STATES ATTORNEY

The Court has mandated that a vital factual issue be resolved at the threshold stage in this case—whether the SSA Evidence showing that Mr. Webster was diagnosed as mentally retarded by three SSA doctors prior to the crime was reasonably available to Mr. Webster's trial counsel. The Government has asserted that Mr. Webster's trial counsel is somehow responsible for the SSA's failure to produce these records when trial counsel originally requested them, and that, to explore this question further, the Government should be permitted access to trial counsel's files in discovery. *See* November 10, 2015 Joint Rule 16-2 Statement of Position ("Pos. Statement") (ECF No. 55) at 8. At the same time, however, the Government affirmatively seeks to curtail Mr. Webster's ability to explore key facts related to its own knowledge of these issues: Did the Government request information from the SSA regarding Mr. Webster, and was it told, as Mr. Webster's counsel was, that no records existed? Further, now that the U.S. Attorney's Office has confirmed that the SSA destroyed Mr. Webster's records in 2010,

after it produced a partial file containing the SSA Evidence to undersigned counsel, it is clear that the U.S. Attorney's Office has meaningful evidence as to the timing and nature of that destruction.

In an implicit concession that information regarding its own knowledge and conduct about SSA records involving Mr. Webster is reasonably calculated to lead to the discovery of admissible evidence regarding the key questions of availability and diligence, the Government has, for the first time in the seven years since Mr. Webster first initiated his attempts to have the courts consider the SSA Evidence, submitted declarations from two attorneys and one special agent purporting to set forth the scope of the Government's knowledge and information on this issue, dating back more than 20 years. But these carefully worded declarations—apparently prepared without review of the Government's files— raise more questions than they answer, and merely highlight the need for additional discovery into this essential issue. Indeed, the declarations are silent about the existence, or not, of relevant information in the Government's 20-year old files, no review apparently having been undertaken.

The Government has squarely contested the availability of the SSA Evidence and attacked the diligence of trial counsel; the narrowly tailored categories of documents and information that Mr. Webster seeks to uncover from the U.S. Attorney's Office have a direct bearing on the merits of these defenses and the constitutionality of Mr. Webster's execution. The Government makes no showing that the information sought would be burdensome in any way. In accordance with the Federal Rules of Civil Procedure, which unquestionably govern the scope of permissible discovery in this case, and to allow for a

fair and just resolution of his case, the Court should order the Government to open its

files to produce any documents or information relating to Mr. Webster's SSA records or

its attempts to obtain them or discover their status.

## I.  MR. WEBSTER IS ENTITLED TO DISCOVERY OF THIS HIGHLY PROBATIVE INFORMATION

The Government's discussion of good cause under Rule 6 of the Rules Governing

Section 2254 and 2255 Proceedings is a red herring.  Rule 6 states that in 2254 and 2255

proceedings, "[a] judge may, for good cause, authorize a party to conduct discovery

under the Federal Rules of Civil Procedure and may limit the extent of discovery."

Putting aside the fact that this is not a 2254 or 2255 proceeding, and the Government has

failed to establish that these rules apply to this 2241 Petition (as discussed in Petitioner's

opening brief, they do not[1]), the Government ignores the fact that the Court has already

authorized the parties to conduct discovery into the very issues that are the subject of this

brief.  *See* Entry Regarding Status Conference (ECF. No. 62) at 1 (ordering discovery

into the threshold issues of whether the Social Security records were unavailable to

Webster and whether his trial counsel exercised due diligence).  Notably, the parties also

agree that this discovery should not be limited to documents and testimony from the

---

[1] Contrary to the Government's assertion, Mr. Webster does not concede that he must demonstrate good cause to conduct civil discovery.  Mr. Webster asserts—correctly—that the Federal Rules of Civil Procedure, including Rule 26's relevance and proportionality standards, apply to this § 2241 habeas petition.  *See* Opening Brief at 4 (citing Fed. R. Civ. P. 81(a)(4) (stating that federal civil rules apply to proceedings for habeas corpus); *United States v. Lowery*, 2009 WL 3460448, at *1 (S.D. Ill. Oct. 22, 2009)).  The cases cited by the Government relate to relief sought by state prisoners under 28 U.S.C § 2254, and to motions brought by federal prisoners under § 2255, and are expressly governed by the Rules Governing Section 2254 and Section 2255 Proceedings.  *See Bracy v. Gramley*, 520 U.S. 899 (1997) (§2254); *United States v. Webster,* 392 F.3d 787 (5th Cir. 2004) (§2255).  This petition is not.  Mr. Webster attempted to bring a successive habeas motion under §2255 and the Government opposed that motion.

third-party Social Security Administration.  The Government itself has stated that, in addition to obtaining discovery from the SSA, it intends to obtain through discovery "information from opposing counsel [*i.e.*, Mr. Webster]: documents and information related to the Social Security records, as well as documents and information related to Webster's trial counsel's diligence." Pos. Statement at 8.[2]  By introducing new facts into the record on this very topic, the Government merely reinforces the fact that further factual development is necessary (*i.e.*, good cause).

Given that the Court has already authorized discovery into these factual issues, the Government is actually asking this Court to limit the scope of permissible discovery under Rule 26 of the Federal Rules of Civil Procedure to exempt the U.S. Attorney's Office from providing the requested information.  However, it is clear that the requested discovery is narrowly tailored and meets the relevance and proportionality standards of Rule 26(b).  Further, given that the Court is addressing events that occurred more than 20 years ago, records from the U.S. Attorney's Office will be highly probative, especially given that the SSA—the only other source for the requested information—has destroyed its files.  The need for reliability is at its apex whenever the government seeks to execute one of its citizens.  In spite of this, the procedure proposed by the Government essentially seeks authorization to inject uncrossexamined statements into the record.  Such one sided procedures do not aid the search for the truth.  Finally, were this Court to require Mr.

---

[2] The Government's claim that civil discovery is not appropriate because this case is some species of a criminal case is also inconsistent with its assertions that Petitioner must comply with *Touhy*, *see* Pos. Statement at 10 n. 2,  which does not apply to criminal cases.

Webster to make an additional showing of good cause to conduct this particular discovery, he more than meets that standard.

## II. THE REQUESTED INFORMATION IS RELEVANT OR LIKELY TO LEAD TO DISCOVERY OF ADMISSIBLE EVIDENCE, *AND* THERE IS GOOD CAUSE FOR ITS PRODUCTION BY THE GOVERNMENT

### A. The Record at Trial Provides Evidence that Relevant Information May be in the Government's Possession

Mr. Webster faces a "black hole," *see Perillo v. Johnson*, 79 F.3d 441, 445 (5th Cir. 1996), with respect to what evidence the U.S. Attorney's Office has that would support his claim; this is so because Mr. Webster does not have access to those files. However, the record at trial provides evidence supporting Mr. Webster's theory that the U.S. Attorney's Office may have evidence that supports Mr. Webster's claim. For instance, it is clear from the Government's exhibit list at trial that the trial team obtained and made use of various medical, agency, and school records of the same sort that the SSA apparently possessed but failed to produce to the defense. By way of example, the prosecution trial team marked as exhibits records from the Southeast Arkansas Mental Health Center, the Jefferson Regional Medical Center, Mr. Webster's school, and the Southeast Arkansas Economic Development District. *See* Supplemental Declaration of Kirsten E. Schubert ("Supp. Schubert Decl.") Ex. 3 at 28-29. The Government relied on such records at trial; for instance, in questioning one of Mr. Webster's expert witnesses, Dr. Finn, the Government inquired in detail about records from the Southeast Arkansas Mental Health Center and the conclusions reached by the doctors examining Mr. Webster as reflected in those records, including an IQ score of 48 and diagnoses of antisocial

personality and possible schizophrenia with paranoid ideation. *See* Supp. Schubert Decl. Ex. 4 at 209:25-214:20. Thus there is no doubt that the Government conducted an investigation into Mr. Webster's medical records in an attempt to undermine his claims of mental retardation. Nor is there doubt that the Government attached great important to those records.

It is therefore entirely reasonable for Mr. Webster to inquire into both whether the Government sought similar records from a federal agency—the SSA—and the agency's response. If, as Mr. Webster's trial counsel contends, the SSA informed the U.S. Attorney's Office that it had no such records, the Government would not have been required to disclose the SSA's response at the time of trial. And yet, that response would corroborate the very testimony of Mr. Webster's trial counsel that the Government now attacks. Yet, the Government has provided no information whatsoever about the persons who conducted the Government's investigation into Mr. Webster's medical records, what agencies or providers were contacted, and what the investigators were told.

### B. The Roper, Watson, and Grant Declarations Do Not Obviate Mr. Webster's Requested Discovery

Rather than provide information concerning the Government's investigation into Mr. Webster's medical records, the Government offers conclusory declarations from witnesses who claim no personal knowledge of that investigation (and plainly have none), and who clearly never reviewed the 20-year old investigative file in this case. The Government's submission of these declarations in an attempt to address the questions raised by Mr. Webster in fact highlights the existence of a factual dispute, and does

6

nothing to address one of the core questions that Mr. Webster raises: whether the Government sought records from the SSA regarding Mr. Webster and was told by the SSA that none existed.

Mr. Roper and Ms. Watson first aver that the U.S. Attorney's Office complied with their discovery and disclosure obligations. However, the Government does not suggest that those obligations would extend to disclosing the apparent non-existence of requested records. Compliance with *Brady* (and the other discovery obligations imposed on the government in criminal cases) is not enough to answer the questions raised by the facts and circumstances in this case, because these obligations do not require the U.S. Attorney's Office to answer questions regarding, or provide evidence of, what evidence the trial team asked for; these obligations only require the disclosure of evidence actually obtained by the trial team.

Second, the declarants make their statements without any indication that they reviewed the relevant 20-year old investigative files, or even consulted the investigators who conducted the investigation. They make no representation that they had personal knowledge of the investigation into Mr. Webster's medical history which yielded the medical records they used extensively at trial. In fact, neither Mr. Roper nor Ms. Watson state what they did to confirm that the U.S. Attorney's Office complied with its *Brady* obligations, much less whether they had personal knowledge regarding what the Government's investigators requested and from what agencies. While Mr. Roper declares that he is "confident that other members of the prosecution team would have

7

alerted me to the existence of this material," he gives no indication of if, or how, he confirmed this belief.

Next, although Mr. Roper and Ms. Watson declare that the U.S. Attorney's Office did not attempt to obtain the SSA Evidence (as defined by Mr. Webster in his opening brief to include the records in the partial file that was produced to undersigned counsel by the SSA) prior to or during Mr. Webster's trial and sentencing, this does not address whether the U.S. Attorney's Office—or other members of the trial team, including the FBI and local law enforcement, whose knowledge is imputed to the U.S. Attorney's Office—sought records from the SSA more generally regarding Mr. Webster. Regarding that question, Mr. Roper and Ms. Watson declare only that "[t]o the best of [their] recollection" the U.S. Attorney's Office "made no attempt to obtain any other SSA records regarding [Mr.] Webster," but they offer no facts as to who conducted the investigation into Mr. Webster's medical records, what the scope of that investigation included, or whether federal as well as state agencies or providers (such as the Southeast Arkansas Mental Health Center and the Jefferson Regional Medical Center from whom the Government *did* obtain medical records) were included in the search. Mr. Roper and Ms. Watson do not indicate what, if anything, they did to confirm their recollection, whether they were even in a position to know of attempts to obtain evidence that did *not* result in obtaining any records, or whether any other investigator or investigative agency connected with the case made such inquiries. Indeed, Mr. Roper and Ms. Watson, who left the U.S. Attorney's office in 2008 and 2013, respectively, make no statement that they reviewed the 20-year old investigative files in this case, and no statement about what

8

documents are in the Government's files concerning the scope of the Government's investigation into Mr. Webster's medical records.

The Court should take note of the precision with which Mr. Roper's and Ms. Watson's declarations are worded: They aver that they are "not aware of anyone at the U.S. Attorney's office, or any investigator or investigative agency connected with the case, having requested *and received* SSA information regarding [Mr.] Webster." (emphasis added). These carefully crafted statements avoid the highly relevant situation in which the Government requested whatever records the SSA may have had regarding Mr. Webster but was told that none existed, thereby corroborating the testimony of Mr. Webster's trial counsel. Moreover, these statements again are limited to Mr. Roper and Ms. Watson's "recollection," without any indication of how that recollection or knowledge was obtained or confirmed.

Special Agent Grant's declaration states that "[t]o his knowledge," his contact with the SSA in 2015 "is the first time that the U.S. Attorney's Office or any agency acting on its behalf has contacted the SSA for records regarding Webster…." However, Special Agent Grant has provided no information regarding what knowledge, if any, he would have of prior requests to the SSA regarding Mr. Webster by the U.S. Attorney's Office or any agency acting on its behalf. Special Agent Grant's declaration also raises a new question: Special Agent Grant declares that the SSA informed him that Mr. Webster's records, including the SSA Evidence, were destroyed in 2010. However, the SSA informed undersigned counsel on December 4, 2009, that the SSA Evidence and any other records had been destroyed. *See* Suppl. LeRoux Decl. Ex. G (ECF No. 64).

Finally, none of the declarations reflect whether a review of the Government's files was undertaken—particularly the files reflecting the investigation into Mr. Webster's medical records—or whether relevant documents are in the Government's files. That simply cannot have been an omission.

These declarations, taken together, fail to address the critical issues raised by Mr. Webster; indeed, the additional questions raised by these declarations demonstrate why sworn testimony and documentary discovery are necessary to answer the factual dispute before this Court.

> **C.** **Discovery from the U.S. Attorney's Office is Necessary to Complete the Record and Permit a Fair and Just Adjudication of Mr. Webster's Case**

Discovery addressing what information the U.S. Attorney's Office has regarding Mr. Webster's SSA records, including not only the SSA Evidence itself but also any inquiries made by the U.S. Attorney's Office and any investigators or investigative agencies acting on its behalf, is necessary to complete the record and allow for a fair and just adjudication of Mr. Webster's case.

First, any documents in the U.S. Attorney's Office files regarding Mr. Webster's SSA files and records, including any requests made for those files, are particularly important in this action because the first question before the Court—whether the SSA Evidence was unavailable at the time of trial despite the diligence of trial counsel—relates to events that occurred more than 20 years ago. Contemporaneous documents from the U.S. Attorney's Office relating to Mr. Webster's SSA files and records would be highly relevant to this question.

Second, the declarations submitted by the Government are devoid of any facts suggesting who conducted the search for Mr. Webster's medical records before or during trial, the steps that person or persons took to obtain such records, and what they were told. Presumably, the chief trial counsel for the Government did not obtain the medical records the Government did use at trial, but the declarations shed no light at all on the Government's attempt to obtain Mr. Webster's medical records, who conducted that investigation, and what they found or did not find.

Third, as discussed above, the Government has confirmed, through Special Agent Grant's declaration, that the SSA destroyed Mr. Webster's file (but in doing so has raised additional questions regarding the destruction of this file). Mr. Webster can no longer obtain this file, which should have been the other source for the information that Mr. Webster seeks from the U.S. Attorney's Office, leaving the U.S. Attorney's Office as the only available source of this information.

Fourth, in the Position Statement, the Government acknowledges that Mr. Webster may subpoena witnesses—including witnesses associated with the U.S. Attorney's Office—to testify at the evidentiary hearing. *See* Pos. Statement at 9-10. To ensure a fair and just hearing, Mr. Webster needs, and is entitled, to obtain discovery to determine whether the U.S. Attorney's Office possesses any documents either corroborating or contradicting their testimony. Moreover, as set forth above, two former employees of the U.S. Attorney's Office who served as members of the trial team have, through their declarations, raised numerous questions about the source and extent of their knowledge.

11

Pre-hearing depositions would provide Mr. Webster an opportunity to explore, and potentially narrow, the issues before the Court at the evidentiary hearing.

Finally, there is no evidence that responding to this limited inquiry would be burdensome to the Government, or that the proposed discovery is in any way disproportional to the life-and-death issues of this case. The proposed discovery clearly fits within the scope of discovery permissible under the civil rules. *See* Fed. R. Civ. P. 26(b) (defining the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.")

### D. Mr. Webster Has Good Cause to Conduct the Requested Discovery

While Mr. Webster should be able to conduct the requested discovery without making an additional showing of good cause, to the extent that the Court requires Mr. Webster to show good cause before authorizing Mr. Webster to seek discovery from the United States Attorney's Office, Mr. Webster has met that standard.

Indeed, the cases cited by the Government support authorization. "When there is a 'factual dispute, [that,] if resolved in the petitioner's favor, would entitle [her] to relief...,' a federal habeas corpus petitioner is entitled to discovery…." *Perillo,* 79 F.3d at 444

(alterations in original). "[I]t is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry" "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is…entitled to relief…." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969); Rule 6 "is meant to be 'consistent' with *Harris*"). In *Perillo* and *Bracy*, the Fifth Circuit and Supreme Court, respectively, found good cause for the petitioners' requested discovery. *See Perillo*, 79 F.3d at 445 (authorizing discovery where there was a "black hole" regarding what occurred during the time period relevant to the petitioner's allegations, and where petitioner "brought forth, as best she can, facts supporting her allegation that [her attorney] had a conflict of interest that adversely affected her."); *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (finding good cause and authorizing discovery where petitioner's theory of judicial corruption was not supported by any "solid evidence," but where there was evidence of corruption by the judge in other cases close in time to the petitioner's case, along with evidence of a relationship between the judge and the petitioner's appointed counsel).

In *Rector v. Johnson*, the only case cited by the Government in which the court found that discovery was not warranted, the court found that the petitioner "failed to make at least a prima facie showing of what specifically he intends to find and prove." 120 F.3d 551 (5th Cir. 1997).

Here, like the petitioners in *Bracy* and *Perillo*, and unlike the petitioner in *Rector*, Mr. Webster—along with the Seventh Circuit, this Court, and the Government—has identified a specific factual dispute, requiring discovery, relating to whether the SSA Evidence was unavailable at the time of trial through the exercise of due diligence. *See Webster v. Daniels*, 784 F.3d 1123, 1142 (7th Cir. 2015) ("the question of whether the evidence…qualifies as newly discovered is contested…The record presently before us is inconclusive about what happened at the SSA"). Resolution of this dispute in Mr. Webster's favor would entitle him to move to the next stage of these proceedings and present evidence of his intellectual disability. Mr. Webster, unlike the petitioner in *Rector*, has also explained what specifically he intends to find and prove. The Government's use of similar records at trial, and the declarations they seek to introduce here, further reinforce: (1) that a factual dispute exists, (2) the parties need additional factual development to resolve the dispute, and (3) the Government has information relevant (and proportional) to the factual dispute. Mr. Webster has therefore shown that there is good cause to conduct the proposed discovery.

## CONCLUSION

For the reasons set forth above, and based upon the entire record in this matter, Mr. Webster respectfully requests that this Court grant him leave to seek the requested discovery from the Office of the United States Attorney for the Northern District of Texas.

Dated:  March 14, 2016                DORSEY & WHITNEY LLP


By  <u>s/ Kirsten E. Schubert</u>
    Steven J. Wells
    *Admitted pro hac vice*
    Kirsten E. Schubert
    *Admitted pro hac vice*
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

Monica Foster (No. 8368-49)
INDIANA FEDERAL COMMUNITY
DEFENDERS, INC.
111 Monument Circle, Suite 2150
Indianapolis, IN  46204
Telephone:  (317) 383-3520
Facsimile:  (317) 383-3525

*Attorneys for Petitioner Bruce Carneil Webster*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 14, 2016, a copy of the foregoing REPLY

BRIEF IN SUPPORT OF PETITIONER'S REQUEST TO SEEK DISCOVERY FROM

THE OFFICE OF THE UNITED STATES ATTORNEY was filed

electronically.  Service of this filing will be made on all ECF-registered counsel by

operation of the court's electronic filing system.  Parties may access this filing through

the court's system.


<u>s/ Kirsten E. Schubert</u>
Kirsten E. Schubert