# Appendix

# A

Declaration of Henry Ernest Velte, III

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BRUCE CARNEIL WEBSTER,

Petitioner,

- vs -

Cause No. 2:12-cv-00086-WTL-MJD

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

Defendant.

## DECLARATION OF HENRY ERNEST VELTE III

I, Henry Ernest Velte III, hereby declare and state as follows:

1.      I am an Assistant Regional Counsel for the Office of the General Counsel (OGC),

Social Security Administration (SSA or Agency), in Dallas, Texas.  I have been employed as an

attorney with SSA's OGC since August 11, 2002.  I submit this Declaration in Response to

Petitioner's Motion to Issue a Subpoena to SSA.  *See* ECF No. 76.

2.      As part of my official duties as a member of the SSA/OGC Dallas' Disclosure

Team, I advise others on requests for information and testimony under SSA's *Touhy* regulations

at 20 C.F.R. Part 403 and other disclosure matters.  I have personal knowledge of the procedures

that SSA employs in responding to *Touhy* requests and requests for records under the Privacy

Act of 1974, 5 U.S.C. § 552a.

3.      In response to Kirsten E. Schubert's April 19, 2016 *Touhy* request (2016 request)

and November 15, 2017, request for reconsideration of SSA's September 23, 2016 *Touhy*

decision (2017 request), I coordinated a search for SSA records and information responsive to

the 2016 request.

4. The 2016 request asked that SSA provide both testimony and records on various topics. Records were requested on eight topics, which included:

a. Records, documents, and information about Bruce Carneil Webster, including but not limited to applications, medical records, claims decisions, payments, appeals, requests for information, correspondence, telephone calls, or meetings;

b. Requests for records or information and communications (including responses to any requests for records and information and the names and contact information for employees involved) between SSA and representatives for (or counsel for) Mr. Webster or the United States Attorney's Office between September 30, 1994 and the date of the 2016 request about Mr. Webster, Mr. Webster's criminal case, or Mr. Webster's records that Ms. Schubert states were released to her firm in 2009.

c. Various regulations, policies, and procedures of the agency that the requester asserts are relevant to the above case relating to requests for records made between 1994 and 1997 and 2008 to the time of the 2016 request, records retention and destruction requirements for requested records, and the conduct of examinations for intellectual disability from 1993 to 1996.

5. The 2016 request sought testimony and records on eight similar topics, which – in addition to the above – included:

a. Creation, maintenance, storage, and destruction of Mr. Webster's records or other records requested by Ms. Schubert.

6. In order to respond to the 2016 and 2017 requests, I contacted SSA employees who may have personal knowledge about requests made by Ms. Schubert's law firm for Mr. Webster's records, including releases to any such requests, and offices familiar with SSA's

2

electronic systems and physical records under which the agency had a reasonable likelihood of maintaining Mr. Webster's claims file records, which would have included the information requested in paragraph 4.a of this declaration.  This included the following offices and employees:

a. The Center for Disability and Programs Support (CDPS), Dallas, Texas.  CDPS provides certification of SSA records and releases such records to authorized requestors.  The employees contacted at the CDPS have expertise in searching SSA systems for records in SSA's possession.  CDPS employees also provide Dallas Region field offices answers to questions regarding subpoenas, court orders and testimony requests and the steps to follow to release records, or route these documents to the Office of General Counsel (OGC), if necessary.

b. The Pine Bluff, Arkansas SSA field office, one of the two field offices where Ms. Schubert asserts her firm made a request for records.

c. Lisa Ruth, an SSA employee that worked in the Pine Bluff field office to whom the Dorsey law firm asserts it addressed a October 8, 2009, request for Mr. Webster's records.

d.  The Terre Haute, Indiana SSA field office, the other SSA field office where Ms. Schubert's firm made a request for records.  This contact included discussion with Brian Hewitt, the District Manager of the Terre Haute, Indiana, SSA field office, whose name was on a December 4, 2009, letter to Ms. Schubert's firm related to its request for Mr. Webster's records.

e. National Records Center (NRC), which is a large storage facility in Independence, Missouri, where SSA records and claims file records are received, stored, managed, and routed for storage or destruction.

f. Agent Joseph Luna of the Dallas, Texas, SSA Office of the Inspector General (OIG), who was mentioned by Ms. Schubert as someone who provided information about Mr. Webster's records.

g. SSA's Dallas Regional Center for Automation, Security, & Integrity (CASI), which conducted searches at the request of Agent Luna.

h. Office of Privacy and Disclosure (OPD), which is responsible for Freedom of Information Act requests and appeals for access rights under the Privacy Act of 1974. Additional information on the searches performed by these offices and employees follows.

7.    CDPS reported to me that it searched for Mr. Webster's claim file records, including any requests for or release of Mr. Webster's records to his attorneys.  CDPS reported searching the following SSA electronic systems for such records.  The searches were conducted using the Social Security Number (SSN) for Mr. Webster (provided by Ms. Schubert) and the SSN of any wage earner or parent whose records may have contained information about Mr. Webster.  The SSN is the primary identifier under which SSA indexes its individual-level program files:

a.  **Pine Bluff Field Office 759** – This system contains electronic records of the Pine Bluff, Arkansas, SSA field office.  This record was searched because the Pine Bluff, Arkansas, SSA field office was the servicing field office for Mr. Webster when he applied for disability benefits.  A search of this system showed that Mr. Webster's SSA records were destroyed.

b.  **Processing Center Action Control System (PCACS) System** – PCACS is an national online workload control system which provides detailed online action control information about all processing centers (PCs).  PCACS query response screens give the user online access to information about account numbers or about specific control records on a particular account.  Additionally, PCACS provides timely and accurate information on the status and location of actions and folders in progress.  A search of this system showed that no claims file records existed at the time the search was performed in 2016.

c.  **Feebaynet** – Feebaynet is a record request database and invoice system used to assist offices in the collection and processing of non-programmatic fees.  A search of this database

showed a Not-In-File (NIF) designation for Mr. Webster's files, indicating no records were located.

d.  **Kansas City National Records Center (NRC) Request for Certification Spreadsheet** – This is an online system housed at the domain "kcsp.kc.ssa.gov" which contains a spreadsheet list of requests for SSA to provide certified copies of SSA claims folders to a requestor.  A search of this system showed a NIF designation for Mr. Webster's files.

e.  **CPS Subpoena and Record Request Databases 2010 to Present** – This database is a system maintained by Dallas CDPS staff containing all records of all requests for records and subpoenas received by Dallas Region field offices (which includes Arkansas) since 2010.  A search of this database showed a NIF designation for Mr. Webster's files.

f.  **Online Retrieval System (ORS) Notice System** – This database is an online storage system which captures and retains print images of SSA-related programmatic notices.  A search of this database located one (two duplicate items) record:  a December 4, 2009 letter to the Dorsey law firm from the Terre Haute field office about destruction of Mr. Webster's records.

g.  **eView** – eView is a web-based application that enables authorized SSA users involved in case processing to view, print, copy to CD and/or take specified action on the disability information contained in the Certified Electronic Folder (CEF).  A search of this application showed a NIF designation for Mr. Webster's files.

h.  **Personal Communications Program (PCOM)** – This is an SSA electronic tool that enables authorized users to access the SSA mainframe system.  A search of this database showed a NIF designation for Mr. Webster's files.

i.  **Claims File Records Management System (CFRMS)** – CFRMS is the system used by SSA to electronically manage claims files and supporting documents.  CFRMS also provides a consolidated view of the claimant's electronic folder.  A search of this system showed a NIF designation for Mr. Webster's files.

j.  **The Non Disability Repository for Evidentiary Documents (NDRed)** – NDRed is a repository in SSA's Document Management Architecture (DMA) created specifically to house documents and forms that cannot be stored or recorded in existing systems.  A search of this database showed a NIF designation for Mr. Webster's files.

k. **Supplemental Security Income Control System (SSICS) Alert Response (AR) 25 query** – This query provides the folder movement annotations for the prior SSA file locations. The results of this query produced a record indicating that Mr. Webster's claims file records were destroyed.

l. **Electronic Automatic Folder Locator query** – This query provides all records that may indicate the location of a folder.  The results of this query produced a record indicating that Mr. Webster's claims file records were destroyed.

m. **SSI Online Folder Shipment List Query** – This query indicates, by SSN, which claims file records were on the Master Destruction List, a list of records scheduled for destruction based on applicable Federal records schedules. The results of this query produced a record indicating that Mr. Webster's claims file records were on this list for destruction.

n. **Paperless ROQS (Read Only Query System)** – This is a web-based application showing users with a read only, real-time view into paperless SSA records. It provides real-time view of the information and document images stored in the paperless form. Further, Paperless ROQS is a workload management system used by Processing Center (PC) staff to manage their workload assignments for processing. This search revealed no records on Mr. Webster.

o. **Prisoner Update Processing System (PUPS) system** – This system contains information about individuals who are incarcerated and may also be receiving SSA benefits. This search revealed no records on Mr. Webster.

The CDPS was unable to locate any additional systems which would have a reasonable likelihood of providing information regarding Mr. Webster's claims file records or records of requests to the field office for copies of Mr. Webster's records.

8.    The Pine Bluff, Arkansas, SSA field office reported to me that it searched for Mr. Webster's claims records, requests for Mr. Webster's records, records relating to release of Mr. Webster's claims records to Ms. Schubert's law firm in 2009, and any persons working for SSA with knowledge of any requests for Mr. Webster's records or release of Mr. Webster's records to Ms. Schubert's law firm in 2009. The Pine Bluff field office reported that it searched both paper and electronic records, using the SSN provided by Ms. Schubert. It located no paper records and – like CDPS – based on an electronic search, the field office determined that Mr. Webster's claims file folder had been destroyed.

9.    Lisa Ruth reported to me that she does not remember the October 8, 2009, request for Mr. Webster's records from the Dorsey law firm and is not otherwise familiar with Mr. Webster's case. Further, she reported that she could not have responded to the records request because she never learned how to work the system required to produce records for requestors. She does not recall who would have produced or responded to the record request.

6

10.    The Terre Haute, Indiana, field office reported to me that it searched for Mr. Webster's claims records, requests for Mr. Webster's records, records relating to release of Mr. Webster's claims records to Ms. Schubert's firm in 2009, and any persons working for SSA with knowledge of any requests for Mr. Webster's records or release of Mr. Webster's records to Ms. Schubert's firm in 2009.  The Terre Haute field office reported that it searched both paper and electronic records for Mr. Webster's records, using the SSN provided by Ms. Schubert. Based on its search, the field office located a December 4, 2009 letter to Olivery McKinstry of Dorsey & Whitney, LLP, indicating that our records show that Mr. Webster's folder had been destroyed.  In addition, the field office – like CDPS – reported that a search of SSA's mainframe computer located one record indicating that Mr. Webster's claims file records were destroyed.

11.    Mr. Hewitt reported to me that he did not personally complete the December 4, 2009, letter to the Dorsey law firm.  Mr. Hewitt reported that an unknown Service Representative in his office sent out the letter based on a search of SSA's electronic systems, and that Mr. Hewitt was not personally involved in any aspect of creating, drafting or researching the December 4, 2009 letter.  Mr. Hewitt explained that all letters sent out of the Terre Haute, Indiana, SSA field office in 2009 were signed with the name of the Field Office Manager – Mr. Hewitt's title at that time – even if drafted by another employee.

12.    The NRC reported conducting a search of paper and electronic records and determining that Mr. Webster's claims file records were destroyed because the NRC had no claims record for Mr. Webster.

13.    While SSA *Touhy* regulations require a separate *Touhy* request in order to obtain records of SSA's Office of the Inspector General (OIG), given Ms. Schubert's mention of correspondence with SSA's OIG, I inquired with Agent Joseph Luna of the Dallas, Texas OIG

7

about whether he had any additional information regarding Mr. Webster's claims file and the circumstances surrounding SSA's destruction of Webster's SSA records. Mr. Luna indicated to me that an employee with Dallas, Texas, SSA Center for Automation, Security, & Integrity (CASI) searched to locate Mr. Webster's SSA file on his behalf. Agent Luna stated that he did not participate in or have personal knowledge of those searches.

14. I contacted the Dallas, Texas, CASI office regarding its search for Mr. Webster's SSA records on behalf of Agent Luna. The office reported searching the PCACS system – like CDPS – to determine that Mr. Webster's claims file records were destroyed. The office reported that, per SSA's record retention policies the claims folder was destroyed as of April 20, 2001.

15. The CASI office also reported that Mr. Webster's parent's folder, which may have contained information about Mr. Webster, was destroyed as of November 16, 2010. However, it was unable to determine if the folder destroyed actually contained information about Mr. Webster.

16. OPD conducted a search of its electronic records, including its eFOIA system, which tracks all requests for records, for the names of the following possible requesters of Mr. Webster's records:

- Bruce Webster, Bruce C. Webster, or Bruce Carneil Webster
- Dorsey & Whitney LLP under the names of Kirsten E. Schubert, Steven (Steve) J. Wells, Gretchen A. Agee, Kristen K. LeRoux, or Oliver McKinstry
- The Law Office of Larry M. Moore under the name of attorney, Larry M. Moore, or Legal Assistant, Kimberly J. Whitehead

This includes all the names of various legal counsel contacts who Ms. Schubert indicated may have requested Mr. Webster's records from SSA. OPD reported that no records were found and that the records retention policy is 6 years for the eFOIA system.

8

17.     Given Brian Hewitt's managerial position at the time the December 4, 2009 letter was sent to Ms. Schubert's firm, SSA also conducted a search of Mr. Hewitt's electronically stored information (ESI).  OGC contacted the Information Technology Resource Management Staff (ITRMS) SSA/OGC, who performed an Electronically Stored Information (ESI) search of e-mail systems of Brian Hewitt.  The ESI search criteria included all of the above listed legal counsel contacts who Ms. Schubert indicated may have requested Mr. Webster's records from SSA.  OGC reviewed the results of the search; no information regarding Mr. Webster's case, his SSA records, or requests for his SSA records were located in this search.

18.     Mr. Webster identifies a number of federal employees as having been interviewed or involved in the Federal Bureau of Investigation (FBI) inquiry into Mr. Webster's SSA records, including Michael Ferguson, Kendall Rees, Joseph Luna, and Jennifer Gunn.  I contacted these individuals, and none of them have ever had personal knowledge of Mr. Webster's SSA records. Additionally, I note that Sharon Ward, who was interviewed by the FBI in September 2015, is no longer employed by SSA.

19.     To the best of my knowledge and belief, SSA has conducted searches of all systems and locations reasonably calculated to uncover any documents relevant to or related to Mr. Webster's claims file records and requests for and releases of those records.

20.     SSA's November 29, 2017 *Touhy* decision, which responded to Ms. Schubert's November 15, 2017, request for reconsideration of SSA's September 23, 2016, *Touhy* decision, approved testimony about and production of all the above electronic records located by SSA about Mr. Webster, including those indicating destruction of SSA records about him.  However, this approval was conditioned on Ms. Schubert providing an updated consent authorizing disclosure of Mr. Webster's records to her law firm, because disclosure without such consent

9

would constitute a violation of the Privacy Act of 1974, 5 U.S.C. § 552a, and SSA's privacy regulations, 20 C.F.R. Part 401. To date, OGC has not received an updated consent authorizing disclosure of Mr. Webster's records to Ms. Schubert's law firm.

21. In addition, between SSA's November 29, 2017 *Touhy* decision and a December 7, 2017 follow-up email to Ms. Schubert, SSA provided or directed Ms. Schubert to the relevant policies and procedures that she sought in her 2016 request.

22. Since the date of SSA's November 29, 2017 *Touhy* reconsideration decision, SSA has not received a request from Ms. Schubert or others to certify records located by SSA in response to the 2016 and 2017 *Touhy* requests, nor has SSA received a request from Ms. Schubert or others to provide a declaration describing SSA's efforts to search for and locate Mr. Webster's claims file records.

23. In Ms. Schubert's 2016 and 2017 *Touhy* requests, she requested testimony regarding various agency regulations, instructions, standards, policies or procedures. This included requests for testimony relating to creation, maintenance, storage, and/or destruction of Mr. Webster's paper claims file records, which SSA indicated has been destroyed; regulations, policies, or procedures, dating back to 1994, that may have governed requests for Mr. Webster's records from SSA based on consent; and regulations, policies, or procedures relating to the conduct of examinations for intellectual disability, from 1993 to 1996. The agency informed Ms. Schubert that approving such testimony would burden SSA and divert these employees from performing their official duties with the agency. *See* 20 C.F.R. § 403.130(b) (2017). Given the complexity, number, and changes in the rules, regulations and policies that govern these topics, the agency would be required to call multiple SSA witnesses in order to provide competent subject matter testimony on all relevant topics. The agency also explained that it approved

10

testimony on information about the actual destruction of Mr. Webster's records, to the extent the information is reflected in existing agency records. Moreover, SSA provided the relevant regulations, instructions, standards, policies and procedures in a less burdensome manner when it released those records with SSA's November 29, 2017, response and in a subsequent December 7, 2017, e-mail to Ms. Schubert and offered to certify those records. *See* 20 C.F.R. §§ 403.130(b)(2), 403.155 (2017) (addressing whether testimony be available in a less burdensome form or from another source as a factor in demonstrating burden of agency testimony and certification of agency records).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 31th day of January, 2018.

Henry Ernest Velte III
Assistant Regional Counsel
Social Security Administration
Office of the General Counsel, Dallas Region
1301 Young Street, Suite A702
Dallas, Texas 75202-5433
Henry.velte@ssa.gov
Telephone 214-767-2921
Fax 214-767-4117

11