# Appendix

# A

Declaration of Henry Ernest Velte, III

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BRUCE CARNEIL WEBSTER,

    Petitioner

v.

CHARLES LOCKETT,

    Respondent.

CAUSE NO. 2:12-CV-86-WTL-MJD
Judge William T. Lawrence

**RESPONDENT'S SURREPLY IN SUPPORT OF HIS
RESPONSE IN OPPOSITION TO THE ISSUANCE OF A SUBPOENA**

Respondent, Charles Lockett, submits this surreply in opposition to Petitioner

Bruce Carneil Webster's motion seeking the issuance of subpoenas to the Social Security

Administration (SSA). In response to the new allegations asserted in Webster's Reply

suggesting that prosecutors in the United States Attorney's Office (USAO) had a legal

duty to preserve SSA records before those records were destroyed in 2010, and alleging

malfeasance on the part of prosecutors, Respondent would show the Court as follows:

**Introduction**

Respondent has established through the declarations of the Northern District of

Texas AUSAs who handled the trial, appeal, and first 2255 petition, that prosecutors from

the USAO were unaware of the SSA evidence until Webster filed his second 2255

petition on October 22, 2009. (Dkt. No. 67 at 5-6). Nothing in Webster's original

motion seeking the issuance of subpoenas, or his reply, reasonably disputes this. In

addition to those declarations, the USAO has turned over its entire Webster file, reserving

**Respondent's Surreply in Support of His Response in Opposition
to the Issuance of a Subpoena – Page 1**

only files specific to Webster's co-defendant.  There is no evidence in those files evincing any knowledge of or investigation into the SSA Evidence during the underlying trial or appeal.  Webster does not dispute this fact either.  And Webster has not alleged, much less demonstrated, that his own trial counsel and/or habeas counsel alerted the courts or prosecutors that SSA had relevant information that counsel was unable to obtain in whole or in part prior to 2010.

Nonetheless, Webster's Reply is replete with allegations that the federal prosecutors were somehow responsible for the destruction of his records in 2010, and are in collusion with the SSA to deny him access to relevant records.  As shown below, however, Webster fails to explain how prosecutors had a duty to take steps to preserve evidence they were not aware existed, fails to show any malfeasance on the part of prosecutors or the Respondent, and fails to provide legal support for the proposition that the SSA's destruction of the records in 2010 can or should be used adversely against the Respondent in the instant litigation.

## Argument

### I.       Prosecutors bore no duty preserve SSA records.

Webster asserts that the USAO bore responsibility for the destruction of Webster's records.  (Dkt. No. 84 at 1 ("The Response also clarified that each agency bears responsibility for the destruction of Webster's records"), and 20 ("[SSA's] current counsel, the USAO, admits that it did nothing to preserve this evidence")).  But Webster fails to clearly identify the nature of the legal duty he wishes this Court to find in order to conclude that prosecutors had some affirmative duty prior to 2010 to take steps to

**Respondent's Surreply in Support of His Response in Opposition
to the Issuance of a Subpoena – Page 2**

preserve SSA Evidence.  That is because this assertion is not supported by the facts in this case, or by the relevant law.

First, as already noted above, Webster cannot reasonably dispute that the USAO was unaware of the SSA Evidence until Webster filed his motion for leave to file a successive motion to vacate his sentence in 2009.  And even when that motion was filed in 2009, the motion specifically asserted that Webster had the SSA evidence in his possession, and he describes that evidence in detail.  (See Motion for Authorization to File Successive Motion to Vacate Sentence, *United States v. Webster*, Cause No. 09-11039 (5th Cir. 2009).  Importantly, Webster did not state that there was evidence outstanding from the SSA.  Webster did not state that he was having difficulty or had had difficulty obtaining that information in 2008-2009.  His motion did not request a preservation order or subpoenas to SSA.  And that motion did not suggest that Webster, at any time, approached the USAO with complaints regarding SSA and the destruction of documents.  In short, Webster asserted in a motion to file a successive 2255 petition in October of 2009 that he had the SSA Evidence that he believed was relevant to his claims.  Webster has pointed to no rule, regulation, statute or case suggesting that prosecutors had some duty following this disclosure of SSA Evidence to take affirmative steps to have the SSA preserve records.

Because there is no rule or regulation or statute or case that imposes the type of duty upon the USAO that Webster is attempting to impose, Webster's Reply purposefully conflates the SSA with the USAO by referring to them collectively as the "Government" and the "United States," and in essence claims that the knowledge held by the SSA that

**Respondent's Surreply in Support of His Response in Opposition to the Issuance of a Subpoena – Page 3**

Webster was seeking these records in 2008-2009 should somehow be imputed to the prosecutors in this case.  However, Webster cites no authority for this proposition either, and in fact courts have declined to impute knowledge to the prosecutor of information possessed by agencies not involved in the investigation or prosecution.  Rather, the prosecution is only deemed to possess information acquired by members of the "prosecution team."  *See United States v. Morris*, 80 F.3d 1151,1169 (7th Cir. 1996) "[N]either *Kyles* [*v. Whitley*, 514 U.S. 419, 437 (1995)] nor [*United States ex rel. Smith v. Fairman*, 769 F.2d 386 (7th Cir. 1985)] can be read as imposing a duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue."); *see also Sutton v. Carpenter*, 617 F. App'x 434, 441 (6th Cir. 2015) ("We find instructive the Second Circuit's decision in *United States v. Locascio* [6 F.3d 924, 949 (2d Cir. 1993)] where the court declined to presume federal prosecutors' knowledge of reports prepared by FBI agents unaffiliated with the trial or underlying investigation.  Like that court, we will not infer the prosecutors' knowledge simply because some other government agents knew about the report.") (Internal quotations omitted); *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989)(the prosecutor's constructive knowledge of material evidence extends only to "federal agencies participating in the same investigation of the defendant"); *United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. 1989)(the application of *Brady* is limited to evidence possessed by the "prosecution team"); *but see United States v. W.R. Grace*, 401 F.Supp.2d 1069, 1078 (rejecting the notion of "trial team" but concluding that the prosecutor was only required to obtain evidence from other

**Respondent's Surreply in Support of His Response in Opposition**
**to the Issuance of a Subpoena – Page 4**

government agencies when the prosecutor has knowledge of, and access to, that information). The "prosecution team" generally includes the agencies that investigated and participated in the prosecution of the instant case. *Morris*, 80 F.3d at 1169.

As the above makes clear, the USAO was under no duty to preserve SSA records when it was unaware of the existence of that information. *Morris*, 80 F.3d at 1169 (holding that there was no "duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue"). The SSA and the USAO are wholly independent agencies, and Webster has not and cannot provide support for the position that the USAO had knowledge of, and exercised any control over, SSA and its documents at any point prior to the destruction of those records. *Accord FTC v. Lights of America Inc.*, 2012 WL 695008, *6 (C.D. Cal. Jan. 20, 2012) (concluding that the FTC "had no obligation or right to issue a litigation hold on [the Department of Energy] or [the Pacific Northwest National Laboratory] because it did not have possession or control over their documents" and was entirely independent of those agencies). Indeed, as the Second Circuit has noted, "the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt 'a monolithic view of government' that would condemn the prosecution of criminal cases to a state of paralysis." *United States v. Avellino*, 136 F.3d 249, 255 (2nd Cir. 1998); *accord Bryan*, 868 F.2d at 1036 ("We agree that a federal prosecutor need not comb the files of every federal agency which might have documents regarding the defendant in order to fulfill his or her obligations under Rule 16(a)(l)(C).

**Respondent's Surreply in Support of His Response in Opposition**
**to the Issuance of a Subpoena – Page 5**

Giving government its broadest reading by expanding it to include all federal agencies (such as the IRS) would not only wreak havoc, but would give the defense access to information not readily available to the prosecution.") (Citations and quotations omitted).

In sum, Webster has presented no evidence to dispute the fact that the prosecutors in this case were unaware of the SSA evidence at all until 2009 when Webster filed his second 2255. He has presented no evidence or authority suggesting that the prosecutors had a duty to contact the SSA in 2009 and demand that it implement a litigation hold for information Webster claimed he already had. It was only well after Webster filed his 2241 in this Court in 2012 that the USAO learned that Webster purportedly did not receive all of the SSA's documentation and that the documentation had been destroyed. At that point, the USAO sent its investigator to determine what information SSA had, and what happened to any information SSA no longer possessed, an action that Webster now asserts evinces collusion on the part of SSA and the USAO. (Dkt. No. 84 at 1). But in any event, there is no legal authority for Webster's assertion that the USAO had some duty prior to that time to take steps to preserve SSA evidence.

II.    **There is absolutely no evidence to support the allegation that the United States "willfully and intentionally" destroyed evidence.**

Although Webster used the possibility of spoliation to support his request for discovery against the USAO, his Reply asserts that the facts in the case "strongly reflect that the Government spoliated evidence by *willfully and intentionally* destroying Webster's records in the middle of litigation." (Id., at 18-19) (Emphasis added). Despite the absence of any evidence that the USAO was aware that Webster purportedly did not

**Respondent's Surreply in Support of His Response in Opposition to the Issuance of a Subpoena – Page 6**

receive all of SSA's files from SSA, Webster relies on the fact that the SSA Evidence was destroyed after he filed his second 2255 to support this claim.

Determining whether spoliation occurred requires a two-part inquiry. First, courts look to whether a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent." *Accord Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008); *accord also Norman–Nunnery v. Madison Area Technical Coll.*, 625 F.3d 422, 429 (7th Cir. 2010) (observing that plaintiff "fail[ed] every element of the test for the spoliation inference" where evidence was destroyed "before [defendant] knew or should have known that litigation was imminent"). Second, courts look for evidence of "bad faith" as "a prerequisite to imposing sanctions for the destruction of evidence." *Trask–Morton*, 534 F.3d at 681. "'[B]ad faith' means destruction for the purpose of hiding adverse information." *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998); *see also Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013), reh'g denied (May 1, 2013), cert. denied, —— U.S. ——, 134 S. Ct. 900, 187 L. Ed. 2d 788 (2014) (citation omitted) ("A party destroys a document in bad faith when it does so for the purpose of hiding adverse information.").

As explained above, prosecutors were unaware of the SSA Evidence at all until October of 2009 when Webster filed his second 2255. Webster has presented neither evidence nor authority for the proposition that the USAO had a duty to know about these records at an independent federal agency that was not involved in the investigation or prosecution of the case against Webster. Further, even once Webster made the USAO aware of these documents, he did not complain about the documents and any problems he

**Respondent's Surreply in Support of His Response in Opposition**
**to the Issuance of a Subpoena – Page 7**

may have encountered obtaining those records until years later.  Again, Webster provides no authority for the proposition that the USAO had a legal duty to affirmatively reach out to SSA to preserve documents that, to the best of the USAO's knowledge, had already been provided to Webster.

Webster implies that SSA must have acted in bad faith in destroying the SSA Evidence because that destruction occurred "*after* the United States Attorney's Office for the Northern District of Texas . . . received and responded to Webster's Fifth Circuit motion seeking to introduce the SSA Evidence in his collateral appeal."  (Dkt. No. 84 at 17).  But the timing is only relevant, or suspicious, if prosecutors had been in contact with SSA at any time before 2010.  They were not.  Rather, the USAO first reached out to SSA in 2015 when it learned of the allegedly missing records.  Given those indisputable facts, Webster cannot show that SSA's actions should be imputed to the United States in this litigation.[1]

**III.    SSA and the USA have not acted in concert to withhold information.**

Finally, Webster makes the unfounded allegation that the SSA and the USAO "are acting in concert as arms of the federal government to withhold . . . key information from Webster, in violation of established principles of discovery and fairness."  (Dkt. No. 84 at 20).  This allegation is set forth in the conclusion, and presumably sums up the various allegations of misfeasance spread throughout the Reply.  For example, Webster claims

---

[1] This surreply does not address what duty, if any, SSA had to preserve documents.  But even if the mere receipt by a SSA field office of a letter seeking records and referencing a criminal appeal created an actionable duty on the part of the SSA to preserve documents, a conclusion the United States denies, Webster has presented no authority for the proposition that an independent federal agency's failure to preserve documents can be used to create an adverse inference against the United States in its prosecution of defendants or defense of collateral appeals.

**Respondent's Surreply in Support of His Response in Opposition to the Issuance of a Subpoena – Page 8**

SSA permitted the USAO to conduct and investigation but is now "blocking" Webster from doing the same. (Id. at 6-7). He further complains that the USAO somehow behaved improperly by defending the SSA in the instant litigation. None of these claims have merit, nor do they show collusion between the SSA and the USAO.

Webster claims SSA permitted the USAO to conduct and investigation but is now "blocking" Webster from doing the same. (Dkt. No. 84 at at 6-7). But the allegation that something untoward has or is occurring is simply wrong. This Court permitted Webster to obtain discovery from the SSA, and Webster undertook that discovery through the SSA's *Touhy* regulations. The SSA responded to Webster's *Touhy* response by explaining what documents it had, providing some documents and offering to provide others once it received a valid consent from Webster, and explaining that, upon a reasonable search, SSA was unable to locate any witnesses with personal knowledge about Webster's files. (See generally Dkt. No. 80). Importantly, that explanation is completely consistent with the information obtained by the FBI and turned over to Webster through the USAO's discovery. Now, Webster seeks to issue subpoenas seeking this same information. The relevant question is whether those subpoenas are likely to result in the discovery of relevant information that is not currently in Webster's possession. Because that is unlikely, objecting to the subpoenas was proper.

Webster also attempts to demonstrate malfeasance by complaining that the USAO "worked directly with the SSA in investigating, responding to, and denying a Touhy request." (Dkt. No. 84 at 16). Webster complains that it is somehow improper for the

**Respondent's Surreply in Support of His Response in Opposition to the Issuance of a Subpoena – Page 9**

USAO to represent the SSA in response to his requests for subpoenas and yet also represent the Respondent.  Webster is wrong.

Webster filed a *Touhy* request with the SSA in 2016.  (Dkt. No. 78-1).  Webster and SSA apparently communicated with respect to that request throughout the remainder of 2016 and most of 2017.  Webster reached out to the USAO towards the end of 2017 to complain that the SSA was not adequately complying with Webster's request, and threatening to file a motion to compel responses.  (Dkt. No. 84 at 14).  That contact was the first notice the AUSAs had regarding *Touhy*, and it was only after that that, as offered to Webster during a phone call, the USAO reached out to SSA regarding Webster's *Touhy* response to determine whether Webster's concerns could be resolved without additional litigation.  (Id).  Thus, the USAO was not been involved with the SSA's *Touhy* until Webster called complaining about the SSA's response and threatening legal action to compel compliance.  The USAO played no role in the SSA's *Touhy* response.[2]

### Conclusion

The sole issue before this Court regarding Webster's motion for subpoenas is whether, in light of SSA's *Touhy* response and the discovery produced by the USAO, SSA has any nonprivileged [information] that is relevant [to those threshold issues] and proportional to the needs of the case[.]"  Webster wrongly impugns the USAO and SSA,

---

[2] Webster complains that Respondent is withholding documents on the basis of privilege but has not provided a privilege log.  (Dkt. No. 84 at 15).  Having re-read footnote 8 in Respondant's Reponse, it is understandable how Webster reached that conclusion.  (Dkt. No. 80 at 15).  But Respondent is not currently "withholding" any documents on the basis of privilege.  Respondent was attempting to convey the fact that three of Webster's proposed document requests sought correspondence between the USAO and SSA, and that any such correspondence between the USAO and SSA that specifically related to Webster's threat to file a motion to compel *would be* privileged should Webster propound the requests for documents.  The undersigned apologizes for any confusion.

**Respondent's Surreply in Support of His Response in Opposition to the Issuance of a Subpoena – Page 10**

but fails to genuinely dispute the fact that SSA has no relevant information other than the documents already provided or offered to Webster through the *Touhy* process. Subpoenas are unnecessary and duplicative and unduly burdensome.  Webster's motion should be denied.

Dated this 2nd day of March, 2018.

Respectfully submitted,

ERIN NEALY COX
UNITED STATES ATTORNEY

s/ *Tami C. Parker*
Tami C. Parker
Assistant United States Attorney
Texas State Bar No. 24003946
Burnett Plaza, Suite 1700
801 Cherry Street - Unit #4
Fort Worth, Texas 76102-6882
Telephone: 817-252-5200
Facsimile: 817-252-5458
E-Mail: tami.parker@usdoj.gov

*Attorney for Respondent USA*

**CERTIFICATE OF SERVICE**

I certify that on the 2nd day of March, 2018, I electronically filed the forgoing

document with the Clerk of the Court using CM/ECF.  I also certify that the forgoing

document is also being served this day on all counsel of record as listed on the CM/ECF's

notice of electronic filing.

s/ *Tami C. Parker*
Tami C. Parker
Assistant United States Attorney
