UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BRUCE CARNEIL WEBSTER,

    Petitioner,

vs.                              CAUSE NO. 2:12-cv-86-WTL-MJD
                                      Judge William T. Lawrence

CHARLES LOCKETT,

    Respondent.

## PETITIONER'S MEMORANDUM IN OPPOSITION TO RESPONDENT'S MOTION TO FILE SURREPLY

## I. THE COURT SHOULD DENY RESPONDENT'S MOTION TO FILE THE SURREPLY

Webster has asked this Court for the opportunity to obtain, from the Social Security Administration ("SSA"), basic information related to the threshold question of his case: whether Webster's SSA records were available at the time of his trial, and whether his trial counsel exercised appropriate diligence in attempting to obtain them.

Webster's requested discovery is set forth in two proposed subpoenas to the SSA. (Dkt. No. 76, Exs. A-B.) These subpoenas seek documents and testimony related to (1) Webster's application and claim for SSA benefits in 1993; (2) his counsel's attempts to obtain his SSA records in 1996; and (3) undersigned counsel's attempts to obtain Webster's SSA records, starting in 2008. Because it is clear that many (if not all) responsive documents have been destroyed, Webster also seeks information and testimony regarding the handling and destruction of his records—namely, the records that were destroyed, the date they were destroyed, the reason they were destroyed, and the SSA's policies that governed destruction of documents, including those requested for litigation. (*See* Petitioner's Mem. (Dkt. No. 77) at 14.) Neither of these proposed subpoenas is directed to Respondent Charles Lockett or to the Department of Justice.

The allegations in the Government's proposed surreply, while wrong, have nothing to do with the discovery issues before this Court. Webster is entitled to know all of the circumstances relating to the existence and destruction of these highly relevant documents. The Court can deal with the USAO's attempts to distance itself from legal culpability for the SSA's misconduct – the main subject of the proposed surreply – once

1

we know what happened.  The Court should deny Respondent's Motion and grant Webster's Motion in full.

**A.      The Proposed Surreply Is Outside the Scope of Webster's Motion**

The proposed surreply has nothing to do with Webster's Motion.  First, Webster's Motion is not directed at the Respondent or the USAO.  It seeks discovery through the issuance of two subpoenas—both of which are directed to the SSA.  Respondent had no standing to object to the subpoenas and certainly has no standing to file a surreply.  *See Hard Drive Prods. v. Does 1-48*, No. 11-cv-9062, 2012 WL 2196038, at *3 (N.D. Ill. June 14, 2012) ("A party lacks standing to quash a subpoena issued to a nonparty unless the party has a claim of privilege attached to the information sought or unless it implicates a party's privacy interests."); *see also United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982).

Second, the proposed surreply does not respond to new evidence or issues raised in Webster's Reply brief.  To justify a surreply, the Government must show that Webster's reply brief "'cites new evidence . . . or objects to the admissibility of the evidence cited in the response.'"  *Miller v. Polaris Labs., LLC*, No. 1:11-cv-01004-TWP-DML, 2014 U.S. Dist. LEXIS 18161, at *4 (S.D. Ind. Feb. 12, 2014) (quoting S.D. Ind. Local Rule 56-1).  Even if the filing of a surreply is deemed appropriate, the surreply "must be limited to the new evidence and objections."  *Id.* at *4.  Respondent's proposed surreply does not meet this standard.

Webster's Motion seeks a limited set of documents and testimony relating to Webster's SSA records and the SSA's treatment, handling, and destruction of those

records, which has resulted in an evidentiary void that neither the SSA nor the USAO has been able to explain. Webster's Motion asks for discovery that could show the circumstances of that destruction—what records were destroyed, when they were destroyed, why they were destroyed, who destroyed them, what policy governed their destruction, who knew about the destruction, and, if the records weren't destroyed until 2010, why was Webster's 2009 record request denied and why was he told the records had been destroyed by December 2009.

As Webster has explained on multiple occasions, if the SSA destroyed Webster's records even though it knew the records were needed for litigation (which it clearly did), the SSA may have violated its records retention policy and committed spoliation. Webster's Reply brief also rightfully points out that the USAO was made aware of the previously withheld SSA records when Webster filed his § 2255 motion in October 2009. If the records were in fact destroyed in 2010 (a fact that was put into the record by the USAO, and which Webster should be permitted to investigate), the USAO would necessarily have known that the SSA Evidence existed before the SSA destroyed it. This, again, raises serious questions about the conduct of these two federal agencies in the handling of Webster's records. At this point, though, Webster is only asking for discovery to determine what happened and when.

Here, it is clear that Respondent is attempting to use a surreply to argue for a different interpretation of evidence that was already in the record. *See Thompson v. City of Indianapolis*, No. 1:15-cv-01712-TWP-DML, 2017 U.S. Dist. LEXIS 64723, at *6-7 (S.D. Ind. Apr. 28, 2017) (denying a motion to file a surreply where the surreply focused

on making new arguments and introducing new evidence with little response to the reply brief); *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, No. 1:09-cv-0340-SEB-DML, 2010 U.S. Dist. LEXIS 29463, at *4 (S.D. Ind. Mar. 25, 2010) ("The purpose for having a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." (internal quotation marks omitted) (citation omitted)).

The proposed surreply is twelve pages of legal argument contending that the USAO has not spoliated evidence. Respondent does not purport to respond to new "evidence" set forth in Webster's Reply, and Respondent cannot point to any new "argument" raised on Reply. Webster's arguments were a direct response to the SSA's admission that Webster's SSA records existed in 2009 when he filed his 2255 motion, paired with the USAO's admission that it took no steps to obtain or preserve the records until 2015. (*See* Respondent's Opp. Mem. (Dkt. No. 80) at 12 nt. 7, 13-14 (SSA stating that Webster's documents were destroyed in 2010, and that no records were destroyed in 2009); *id.* at 14-15 (USAO had no contact with the SSA until 2015).) Indeed, the USAO does not even address the issues before the Court: it does not contest the discoverability of the SSA's documents; it does not raise any new arguments as to why Webster's SSA records, and their destruction, are irrelevant to his case; and it does not provide any additional facts establishing the burden that compliance would impose upon the SSA. Webster has not (yet) moved for a finding of spoliation—he has simply asked this Court to allow him to investigate the circumstances of the destruction of relevant documents.

4

Respondent's proposed surreply is directed not to discovery issues, but to defending the USAO against a spoliation motion that Webster has not yet brought. And in the course of that premature defense, Respondent misstates facts and law. By way of example only, Respondent misrepresents the date it learned of the missing records. Respondent claims it did not learn until "*well after* Webster filed his 2241 in this Court in 2012" that Webster "purportedly did not receive all of the SSA's documentation and that the documentation had been destroyed." (Proposed Surreply (Dkt. No. 85-1) at 6 (emphasis added).) "*At that point*, the USAO sent its investigator to determine what information SSA had, and what happened to any information SSA no longer possessed." (*Id.* (emphasis added).) "[T]hat point," according to the USAO, was September 2015. (*See e.g.*, Respondent's Opp. Mem. (Dkt. No. 80) at 14-15.) Respondent re-iterates this on page 8, stating that "the USAO first reached out to the SSA in 2015 when it learned of the allegedly missing records." (Proposed Surreply at 8.)

That allegation is demonstrably false—the United States was made aware of the missing records, and Webster's futile attempts to retrieve them, in October 2012. (*See* Webster's October 12, 2012 Reply to Respondent's Return to Order to Show Cause (Dkt. No. 23) at 15, and Supplemental Decl. of Kristen K. LeRoux (Dkt. No. 25) (detailing Webster's arguments and submitting testimony that the file produced by the SSA in 2009 was incomplete on its face, that Webster made multiple attempts to obtain the missing records, and that the SSA informed him in 2009 that his records had been destroyed).) Respondent claims that it had no duty to preserve SSA records "when it was unaware of

the existence of that information," but has not been forthcoming about when that was. Webster deserves to know when the USAO office first knew that his records were missing.

In another example, Respondent asserts that requiring the USAO to contact the SSA, after learning that the SSA had records which were certain to prove Webster is intellectually disabled, would "wreak havoc" and impose a "'monolithic view of government' that would condemn the prosecution of criminal cases to a state of paralysis." (Proposed Surreply at 5-6.) This argument is completely misguided. The USAO did not, as it claims, need to "comb the files of every federal agency which might have documents" relating to Webster. To the contrary: the USAO already knew— through litigation—that a single agency of the federal government had records that directly undermined Webster's capital sentence. The USAO failed to contact the SSA to make sure those key records, and any other related records, weren't destroyed. As a result of that inaction, the SSA destroyed *all* of Webster's records, even those the SSA produced. The USAO's failure to act directly threatens Webster's life: he will never be able to access the unproduced and now-destroyed documents that could have bolstered his evidence of intellectual disability, and provided further proof that the SSA told trial counsel in 1996 that Webster's records were destroyed.

The United States has an obligation to preserve records that it knows to be relevant. *See, e.g., United States Medical Supply Co v. United States*, 77 Fed. Cl. 257, 274 (2007) (imposing spoliation sanctions on the United States when DOJ attorneys failed to preserve relevant documents that were not within the possession of the USAO

but located at various medical treatment facilities in Texas and Oklahoma). In this case, the USAO undoubtedly knew Webster's SSA records formed the basis of his challenge to his capital sentence, and should have taken steps to ensure the SSA preserved them.

But this discussion is premature. Spoliation is obviously an important issue in this case, but the merits of Webster's spoliation claim and the effects of the destruction of documents on the merits of this proceeding should be heard after discovery is complete, after the facts of the document destruction have been fully explored, and after Webster makes a fully informed spoliation motion—not in a proposed surreply to a discovery motion. To get to that point, the two subpoenas that are the subject of this motion should be issued.

## II.   CONCLUSION

For the reasons stated above, Webster respectfully requests that the Court deny

Respondent's request to file the proposed surreply.


Dated:  March 16, 2018                    DORSEY & WHITNEY LLP


By _s/ Kirsten E. Schubert_____
    Steven J. Wells
    *Admitted pro hac vice*
    Kirsten E. Schubert
    *Admitted pro hac vice*
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

Monica Foster (No. 8368-49)
INDIANA FEDERAL COMMUNITY
DEFENDERS, INC.
111 Monument Circle, Suite 2150
Indianapolis, IN  46204
Telephone:  (317) 383-3520
Facsimile:  (317) 383-3525

*Attorneys for Petitioner Bruce Carneil Webster*

# CERTIFICATE OF SERVICE

I certify that on the 16th day of March, 2018, I electronically filed the forgoing

document with the Clerk of Court using CM/ECF. I also certify that the foregoing

document is also being served this day on all counsel of record as listed on the CM/ECF's

notice of electronic filing

 *s/ Kirsten E. Schubert*
Kirsten E. Schubert
